DAVIS, Judge.
J.V., the Father, challenges the trial court’s order adjudicating his son J.J.V. dependent as to the Father.[1] The Department of Children and Family Services and the Guardian ad Litem concede, and we agree, that it was error for the trial court to conclude that the Department proved by a preponderance of the evidence that the child was at substantial risk of imminent abuse or neglect at the hands of the Father. Accordingly, we reverse.
On December 23, 2011, the child was sheltered due to an incident that occurred while the child was with his mother and stepfather. The Father was not implicated in any way in the allegations contained in the emergency shelter petition.
The record before this court indicates that the Father previously had been on felony probation when he violated that probation by attempting to sell an assault rifle. As a result, he served one year and three months in prison; he was released in September 2010. Since his release from prison, he has had regular contact with his child, has contributed to the child’s support, and has had no further criminal problems. However, based on his criminal past, the Father was determined not to be a suitable placement for the child at the time of shelter. Instead, the child was placed with the Father’s mother.
*579 In its petition to adjudicate the child dependant as to the Father, the Department maintained that the Father was a danger to his son because he was a member of the Bloods gang. The Father, however, denied any gang involvement. At the hearing on the dependency petition, a Hillsborough County Sheriffs detective testified for the Department as an expert on street gangs. He gave extensive testimony regarding the Father’s numerous tattoos and how they prove his gang involvement. Some of the tattoos were obtained by the Father when he was sixteen and seventeen years old. He was twenty-three at the time of the hearing.
In granting the dependency petition, the trial court found as follows:
[T]he State has proven by a preponderance of the evidence that the father has been identified as a certified member of a gang known as the Bloods. Moreover, specifically a member of the subset of the Bloods known as G Shine, which he coincidentally has a tattoo of on his arm.
I’m going to further find that the tattoos that were viewed by the detective in this case were clearly identified as tattoos belonging to the Bloods.
This is also about, not only being a certified gang member and being a danger to his child, as the expert testified, but this Court can also infer from the sale of an assault weapon as a dangerous activity, combined with a tattoo that says, “There’s no money like dope money,” and consequently this Court is going to find that this child is at a substantial risk of imminent harm, abuse and/or neglect from the father.... [0]n the other hand, he has been actively involved in his son’s life. He has stepped up to the plate in terms of providing support for the child and, most importantly, visiting the child all the time.... [H]e is doing a good job with his son right now.
In its written order, the trial court concluded that “[bjased on the totality of the circumstances, the child is at substantial risk of imminent abuse and neglect from the [Fjather” based on the Father’s association with a gang.
On appeal, the Father argues that the Department failed to establish that “the child has suffered, or is likely to suffer, adverse consequences as a result of any past behavior or any tattoos that the Father currently has” and that the evidence was “an insufficient predicate for the court’s finding of dependency.” We agree.
“Under section 39.01(14)(f), a child may be found dependent if the court finds the child to be ‘at substantial risk of imminent abuse, abandonment, or neglect by the parent or parents or legal custodians.’ ” F.S.G. v. Dep’t. of Children & Family Servs., 825 So.2d 530, 531 (Fla. 2d DCA 2002). Section 39.01(2), Florida Statutes (2011), defines abuse in pertinent part as follows: “[A]ny willful act or threatened act that results in any physical, mental, or sexual injury or harm that causes or is likely to cause the child’s physical, mental, or emotional health to be significantly impaired. Abuse of a child includes acts or omissions.”
Furthermore, section 39.01(44) provides as follows:
“Neglect” occurs when a child is deprived of, or is allowed to be deprived of, necessary food, clothing, shelter, or medical treatment or a child is permitted to live in an environment when such deprivation or environment causes the child’s physical, mental, or emotional health to be significantly impaired or to *580 be in danger of being significantly impaired.
This court has stated that “ ‘[t]he issue in prospective neglect or abuse cases is whether future behavior will adversely affect the child and can be clearly and certainly predicted.’ ” F.S.G., 825 So.2d at 531 (emphasis added) (quoting Palmer v. Dep’t. of Health & Rehabilitative Servs., 547 So.2d 981, 984 (Fla. 5th DCA 1989)).
Here, although the Father’s tattoos indicate that he may once have been associated with a gang, the detective testified that he has no indication that the Father has had any criminal involvement since his September 2010 release from prison. And there was no other evidence offered to suggest that the Father was currently involved in criminal activities or associated with gang members. As such, there was no evidence presented below to support the trial court’s determination that the Father’s tattoos “clearly and certainly” predicted future abuse and neglect. See id. To the contrary, the paternal grandmother testified, and the trial court specifically found, that the Father had been very diligent in visiting his son and offering financial support.
Accordingly, we must reverse the trial court’s order of dependency.
Reversed.
LaROSE and BLACK, JJ., Concur.

. The child’s mother entered a consent to the dependency petition.